HON. SAMUEL McGOWAN, " "

---

### CARPENTER v. STRICKLAND.

1. A warrant to seize crop, under an agricultural lien, cannot be issued against a party unless the agreement for a lien was in writing and signed by the party charged.

2. An employe upon a farm, who is to receive for his services an amount equal to one-half of the crop made, and is to work under the direction, supervision and control of the employer, has no interest in the crop, and, therefore, no right to bind it by a lien.

3. The statute authorizes a lien to be given only by an owner of the crop as land owner or tenant, and, as such, a cultivator of the soil on his own account.

4. The word "employed," as used in this statute, is synonymous with the word "engaged," and does not authorize a lien to be given by a mere employe.

5. The lien given to an agricultural laborer by another statute does not give him such an interest in the crop as would permit him to bind his interest by a lien for advances.

A

Before WALLACE, J., Anderson, March, 1883.

The opinion states the case.

*Mr. J. L. Tribble,* for appellant.

*Messrs. Moore & Wardlaw,* contra.

September 24th, 1883.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   In 1882, B. F. Strickland leased from A. A. Carpenter about fifty acres of land; and on January 12th, of that year, he entered into a written agreement with one G. W. Wilson, by which he hired Wilson, and his wife and children, to cultivate "about twenty acres of the land, to work the crop at the proper time, and to gather the same when mature, under the direction, supervision and control of the said Strickland. The lands to be cultivated—seventeen acres in upland cotton, and about three acres in bottom corn; the said Strickland to furnish, in addition to the land, tools and stock, and one-half of all fertilizers. In consideration of the services above contracted for, the said Strickland to pay the said Wilson, his executors, administrators, heirs or assigns, an amount equal to one-half of all crops, cotton, corn, &c.; the amount of said portion of the crops to be paid as soon as the crop shall have been gathered and prepared for market; the services herein contracted for shall begin on January 1st, 1882, and continue as long as may be necessary; and, during such time, Wilson to have the use and occupation of a house on or near said lands," &c.

On January 11th, 1882, in order to secure supplies, Wilson executed to A. A. Carpenter what was called an agricultural lien "on his crops of cotton, corn, wheat and all other products of the said farm or farms, wherever grown, to be delivered over to him as soon as they are gathered and can be prepared for market," &c. Strickland also gave Carpenter an agricultural lien and mortgage; but they have both been paid, and do not enter into the case. Under the alleged lien, Wilson received supplies from Carpenter to the extent of about $82.28 up to

April 10th, 1882, when, with the consent of both Carpenter and Strickland, he abandoned his crop and left the place; and, as Carpenter alleges, Strickland verbally agreed to complete the working of the crop, and out of the proceeds of its sale, to pay the advances due, or to become due, to Carpenter. Strickland did take possession of the half-made crop, and gathered and disposed of it; but, denying the alleged agreement, refused to pay Wilson's lien to Carpenter, who thereupon procured an agricultural warrant on Wilson's lien against Strickland, and seized several bales of his cotton to satisfy it.

Strickland denied that he ever agreed to assume Wilson's lien, or that he could verbally adopt it so as to make it enforceable by law against him as a lien; and also insisted, as matter of law, that the demand of Carpenter never was a good and legal lien upon the crop, either as against Wilson or himself, for that he never signed it, and Wilson was a mere hired laborer to work the crop, in which he had no interest, and upon which he could not give a lien in advance. An issue to try the question was framed, and Judge Wallace held with the defendant Strickland, and dismissed the proceedings.

From this order Carpenter appeals to this court upon the following grounds: " 1. Because his Honor erred in holding that G. W. Wilson had no such interest in his crops on which he could give a lien to A. A. Carpenter, the land owner. 2. Because his Honor erred in not holding that, upon Strickland taking by agreement the crop of Wilson, the said crop was liable to pay for all advances made to Wilson up to the time of that agreement, and thereafter to Strickland himself. 3. That Strickland, after taking Wilson's crop and procuring advances upon his lien, was thereby estopped from denying the validity of said lien." From the view which the court takes it will not be necessary to consider whether any, and, if so, what verbal agreement was made by Carpenter and Strickland at the time Wilson was discharged and left his crop. Strickland was not sued upon any such contract; but the proceeding was a warrant against Strickland, issued by the clerk under the statute, upon the undertaking of Wilson, which, as alleged, had been verbally assumed by Strickland. The only question is, whether that warrant, as

against Strickland, was authorized by law. He certainly never signed it; and we think the clerk exceeded his authority, under the statute, when he issued it against Strickland upon his alleged verbal agreement to take the place of Wilson. The proceeding was under the act which gives the stringent remedy of a lien in advance under which the crop may be seized and sold only where "an agreement in writing shall be entered into before such advance is made," &c.

Besides, we agree with the Circuit judge that Wilson, under his contract with Strickland, was nothing more than a laborer employed for wages, and had no interest, present or prospective, in the crop itself. He was "hired" to work "under the direction, supervision and control" of Strickland, and, in consideration of "the services contracted for," was to "be paid an amount (of money) equal to one-half of all crops, cotton, corn, &c., as soon as the crop should be gathered; the services contracted for to continue as long as may be necessary;" and during such time special provision is made that Wilson "may have the use and occupation of a house on or near the land," &c., &c. All this is inconsistent with the idea that Wilson was lessee and proprietor of the premises for the year. The terms of the contract in this case are much more explicit than they were in that of *Huff* v. *Watkins*, 15 *S. C.* 82, in which this court held that "under a contract by which the services of an agricultural laborer are to be compensated by a share of the crop made, but he is to work under the exclusive direction of the employer, who is to have the entire control of the laborers' time and services, the relation of master and servant exists."

Wilson being a mere laborer for stipulated wages, we think it follows that he had no right to give a lien upon the crop to be made. The act upon the subject (*Gen. Stat.*, § 2397,) provides that "if any person or persons shall make any advances, either in money or supplies, to any person or persons who are employed or about to engage in the cultivation of the soil, the person or persons so making such advance or advances shall be entitled to a lien upon the crop which may be made during the year upon the land, in the cultivation of which the advances so made have been expended," &c., &c. As we understand it, this means a

cultivator of the soil upon his own account; that is to say, a proprietor, either as land owner or tenant, and as such owner of the crop to be made. It could not have been the intention of the law to include a mere laborer for wages, although he might be engaged as a farm hand in the cultivation of the soil. In such case the laborer has no interest in the crop as such, and to authorize him to encumber the crop of his employer would be to give him rights in the property of another, to introduce great confusion, and, indeed, to destroy the important business of farming with hired labor.

An argument in favor of this right claimed for the mere laborer was drawn from the use of the word "employed." It was said that the word "employed," as used in the act, necessarily implies that there was an employer and an employe, and, therefore, it was the express intention to include him as one employed. We do not think that such was the intention of the law makers, but rather that they used the word "employed" as synonymous with "engaged"—as engaged in a particular business, simply to include those who were already engaged (or employed), as well as those who were about to engage in the cultivation of the soil. This construction is supported by the fact that the original agricultural lien law of 1866, and all amendments thereto down to the act of 1878, used in the same connection the words "engaged, or about to engage," &c. *Gen. Stat.*, 1872, *ch. CXX.*, § 55. This is shown to be the correct construction also by the succeeding section of the act itself, which gives the right to seize the crop in case the person to whom the advances have been made "is about to sell or dispose of his crop." How could a mere laborer, for hire, without having any interest in the crop, sell or dispose of his crop?

It is further urged that, under another provision of the law, an agricultural laborer, whether working for a share of the crop or for wages in money, has the first lien upon the crop in whose hands soever it may be; and, at least, to the extent of this right, the lien of Wilson to Carpenter authorized an agricultural warrant and seizure of the crop made upon the place. The act does go very far to favor the agriculture of the country in allowing a *bona fide* farmer to give in advance a first lien on his

crop not yet in existence; but it certainly does not go to the extent of allowing a mere laborer on a farm to give a lien for supplies upon his possible lien for wages as a laborer—a lien in advance upon another claim which may exist at the end of the year. The words of the alleged lien itself, drawn in exact conformity with the act, furnish the answer to this view. They do not pretend to give a lien on claims and mere *choses in action* of the lienor, but a first lien on his crops of cotton, corn, wheat and all other products of the farm," &c. This court has held that the agricultural lien act being a new law must be enforced according to its terms, and that the courts cannot go beyond the remedy provided by it, or supplement it by amendment under the forms of construction. *Kennedy* v. *Reames*, 15 *S. C.* 548.

The judgment of this court is that the judgment of the Circuit Court be affirmed.